# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIRSTIE DUNBAR-KARI,<br><br>        Plaintiff,<br><br>   vs.<br><br>UNITED STATES OF AMERICA, and STUART JOHNSTON, d.b.a., JOHNSTON CONSTRUCTION,<br><br>        Defendants.<br>_____<br>STUART JOHNSTON, d.b.a. JOHNSTON CONSTRUCTION,<br><br>        Cross-complainant,<br><br>   vs.<br><br>UNITED STATES of AMERICA,<br><br>        Cross-defendants.<br>_____/ | CASE NO. CV-F-09-0389 LJO SMS<br><br>**ORDER ON DEFENDANT JOHNSTON'S MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

This action arises out of a fire that burned the El Portal Market ("Market") in Yosemite National Park ("Yosemite") on April 21, 2008. Plaintiff Kirstie Dunbar-Kari ("Ms. Dunbar-Kari"), who signed a six-year contract to operate the Market one month prior to the fire, alleges that the fire was caused by

1

the negligence of defendants United States of America ("government") and Stuart Johnston, d.b.a. Johnston Construction ("Johnston"), while Johnston was overseeing the Market's construction renovations.

By notice filed on October 29, 2010, Defendant Stuart Johnston, dba Johnston Construction moves for summary judgment as to the first claim in first amended complaint ("FAC") pursuant to Fed.R.Civ.P. 56. Plaintiff Kirstie Dunbar-Kari filed an opposition to the motion on November 15, 2010. Johnston filed a reply brief on November 22, 2010. Pursuant to Local Rule 230(g), this motion was submitted on the pleadings without oral argument, and the hearing set for November 29, 2010 was VACATED. Having considered the moving, opposition and reply papers, as well as the Court's file, the Court issues the following order.

## BACKGROUND

On March 31, 2008, the government, through the National Park Service, awarded Ms. Dunbar-Kari a six-year concession contract (#CC-YOSE 003-08) to operate the Market. On April 21, 2008, while the government and Johnston, its contractor, were renovating the Market building's structure, a fire ignited. Ms. Dunbar-Kari alleges that the fire ignited due to electrical malfunctions and defects caused by the negligent acts, omissions, and other conduct by the defendants, and particularly Johnston. The fire destroyed the Market and Ms. Dunbar-Kari's property contained inside the Market. As a result, Ms. Dunbar-Kari alleges that she suffered damages in the form of lost personal property, lost future net profits from the Market, lost salary, and the cost of loan payments.

Ms. Dunbar-Kari filed her first amended complaint on January 14, 2010 asserting seven causes of action against defendants. The sole cause of action against defendant Johnston is the First Cause of action for Negligence.

In this motion, defendant Johnston moves for summary judgment on the claim for negligence.

## STANDARD OF REVIEW

**A.     Summary Judgment/Adjudication Standards**

F.R.Civ.P. 56(b) permits a "party against whom relief is sought" to seek "summary judgment on all or part of the claim." Summary judgment/adjudication is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment/adjudication as a matter of law.

F.R.Civ.P. 56( c); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment/adjudication is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

On summary judgment/adjudication, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56 ( c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970).

To carry its burden of production on summary judgment/adjudication, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) ("Rule 56( c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of

proof at trial.")

**B.    Duty and Proximate Cause**

The parties' dispute in this motion centers upon the element of causation in the negligence cause of action. Defendant also raises a narrow issue of his duty to plaintiff.

The elements of negligence consist of duty, breach of duty, proximate cause, and damages. *John B. v. Superior Court*, 38 Cal.4th 1177, 1188, 45 Cal.Rptr.3d 316 (2006).

**1.    Causation**

Proximate cause involves two elements: (1) cause in fact, and (2) the extent to which public policy considerations limit a defendant's liability for its acts. *PPG Industries, Inc. v. Transamerica Ins. Co.*, 20 Cal.4th 310, 315-316, 84 Cal.Rptr.2d 455 (1999) (holding that an insurer's negligent failure to settle a personal injury lawsuit was a cause in fact, but not a proximate cause, of the award of punitive damages.) The first element, cause in fact, is established if an act "is a necessary antecedent of an event." *Ferguson v. Lieff, Cabraser, Heimann & Bernstein*, 30 Cal.4th 1037, 1045, 135 Cal.Rptr.2d 46 (2003). Whether a defendant's negligence was a cause in fact of plaintiff's damage is generally a factual question for the jury to resolve. *Ferguson*, 30 Cal.4th at 1045. The second element is "concerned, not with the fact of causation, but with the various considerations of policy that limit an actor's responsibility for the consequences of his conduct." *Ibid.* "Because the purported causes of an event may be traced back to the dawn of humanity," the law imposes additional limits on liability that are not related to " 'Simple causality.'" *Ibid.*

**2.    Parties' Arguments Regarding Causation**

Defendant argues that he is entitled to summary judgment because he was not the cause of the fire. Johnston argues that the evidence shows that the fire started in the splice box on the exterior of the El Portal Market. Johnston presents evidence that the fire investigation revealed, to which the Fire Chief Harold Nolen opined, that the splice box broke down and shorted out due to the age of the building and the wiring. Chief Nolen was of the opinion that the insulation on the wiring in the splice box had broken down from years of overheating, eventually resulting in an electrical short. (Doc. 48-2, Exh. 2, Nolen Depo p.70.)

Johnston presents evidence that he had begun renovation on the El Portal Market three weeks

before the fire. He last worked on the Market on Thursday, April 17, 2008, and the fire occurred on following Monday, April 21, 2008. Johnston presents evidence that his contract did not include work on the splice box and did not include replacing any wiring in the building. (Doc. 51, Johnston Decl.¶4.) Johnston argues that there is no evidence he worked on or even touched the wiring system. Johnston argues that the fire was caused by an electrical short in a splice box that Johnston never touched or contracted to touch.

Plaintiff does not dispute, in large part, that the fire was caused by a short in the splice box. Chief Nolen, who investigated the fire, concluded that the fire was caused by a short in the splice box on the exterior of the market's structure. (Doc. 48-2, Exh. 2, Nolen Depo p.33.) He opined that the construction work done by Johnston would have caused the walls and floor to move as the structure of the Market was old. Chief Nolen further concluded that the recent construction activity prior to the fire "aided the quick ignition and destruction of the structure." (Doc. 48-2, Nolen Depo. p. 71.)

Plaintiff argues that an issue of fact is raised as to the origin and cause of the fire. Plaintiff argues that the United States' designated expert, Chyrillis Holmes, disagrees as to the origin and cause of the fire. He opines that there are several potential causes, and the origin cannot be specifically determined. Plaintiff argues these conflicting expert opinions as to causation, and some of which implicate Johnston, raises an issue of fact.

### 3. The Evidence that Johnston Caused the Fire is Speculation

Speculation is insufficient to show an actual causal link between the fire and Johnston's work. "[P]roof of causation cannot be based on mere speculation, conjecture and inferences drawn from other inferences to reach a conclusion unsupported by any real evidence, or on an expert's opinion based on inferences, speculation and conjecture." *Saelzler v. Advanced Group 400,* 25 Cal.4th 763, 775 (2001) (expert's opinion was speculative that additional security at an apartment complex would have prevented an assault on plaintiff). A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, "it becomes the duty of the court to ensure that the defendant prevails." *Id.* at 775-776.

An expert's speculations do not rise to the status of contradictory evidence, and a court is not bound by expert opinion that is speculative or conjectural. *McGonnell v. Kaiser Gypsum Co., Inc.,* 98

1  Cal.App.4th 1098, 1106, 120 Cal.Rptr.2d 23, 29 (2002).  In *McGonnell*, plaintiff submitted an expert's
2  declaration that said it "was more likely than not" that the defendant's asbestos products had been the
3  products which caused plaintiff's injury. The court upheld summary judgment for defendant stating that
4  "Plaintiffs cannot manufacture a triable issue of fact through use of an expert opinion with self-serving
5  conclusions devoid of any basis, explanation, or reasoning."  *Id.*

6      The Court finds that there is no triable issue of fact as to the cause of the fire.  Here, the evidence
7  is mere speculation that the cause of the fire arose from any activity by Johnston.  First, the experts are
8  conflicting as to the origin of the fire. The parties do not dispute, for purposes of this motion, that the
9  origin of the fire was the splice box, but the experts do not agree on this point.  The expert for the United
10 States opines that the origin of the fire is unknown, and that it is not known that the splice box is the
11 location of origin. Chief Nolen unequivocally states the point of origin is the splice box.  This dispute
12 does not create an issue of fact, however, because the experts are entirely uncertain as to the cause of
13 the fire.

14     Each party presents expert testimony who have differing opinions as to what might have caused
15 the fire.  Chief Nolen narrowed the location of the fire to the splice box.  He opined, not precisely what
16 caused the fire to ignite, but what <u>might have</u> caused the fire to ignite at the location of the splice box.
17 He opined as to the age of the insulation, the age of the wiring, the potential means of igniting -
18 vibrations from the construction activity and possibly from merely shutting the doors.[1]  Chief Nolen
19 admitted that it was speculative as he did not know for sure how the fire ignited but believed that the
20 construction activity contributed to the fire. (Doc. 48-2, Exh. 2, Nolen Depo p.60-61 ("But I don't see
21 it as being a major contributor, no.").)  The United States' expert, Mr. Holmes, opined that electrical use
22 and failure to secure the premises could be a contributing cause.  He opined that Johnston used extension
23 cords during the renovation of the market.  (Doc. 53, Exh. 4, Holmes Depo. p. 55.)  He also opined that
24 the fire could have originated from the sub-panel under the Market or the circuit breakers.  He opined
25 also that a transient who lived under the market could have caused the fire.  While each expert reviewed

---

[1] "I would say given the age and condition of this building anything done, shutting the front door, would cause that to do it.  I've investigated garage fires where slamming a door would do it.  A building that old is going to shift no matter what you did."  (Doc. 48-2, Exh. 2, Nolen depo p. 116.)

6

1 certain conduct that Johnston may have engaged in, each expert acknowledges that the expert is
2 speculating as to the cause.

3 Further, while the expert for the United States, Mr. Holmes, is critical of Chief Nolen's
4 investigation, he does not opine as to the cause of the fire. Mr. Holmes opined that in the investigation,
5 Chief Nolan did not consider all of the information and data available. (Doc. 53-1, Exh. 4, Holmes
6 depo. p.55-58.) He should have considered extension cords used by Johnston which could have caused
7 the fire, or the sub-panel in the building, which had nothing to do with Johnston. (Doc. 52, Exh. 4,
8 Holmes Depo. P. 93.) There is some evidence that Johnston had used some electrical outlets in the
9 Market, but no expert attributes the use of the outlets to the fire. (Doc. 53-1, Johnston Depo. p.39.)
10 There is some evidence that Johnston had worked on installing exit signs, but no expert attributes the
11 exit signs to the fire. The United States' expert specifically opines that he cannot establish the origin
12 of the fire and therefore cannot establish the cause of the fire. (Doc. 48-5, Exh. 4, Holmes Depo p. 88-
13 89.)

14 Indeed, Chief Nolen comes to nearly the same conclusion. He cannot establish the cause of the
15 fire. He states that the wiring in the building was so old that merely slamming a door could have caused
16 the vibrations which would rub against the insulation in the splice box, and potentially ignite it.[2] When
17 asked the question of whether "Mr. Johnston's remodeling of the El Portal Market played any role in
18 the cause of the fire?" Chief Nolen responded,

19 "Indirectly, probably. I don't see it would directly. When you start beating on walls and
floors and things like that a building this age is going to move. You know, whether or
20 not that played a role I don't know if it could. But given the wiring going through walls
and things like that if the wall moved as they rubbed on it, it's possible. But I don't see
21 it as being a major contributor, no." (Doc. 48-2, Exh. 2, Nolen Depo p. 60.)

22 "A tort is a legal cause of injury only when it is a substantial factor in producing the injury."
23 *Soule v. General Motors Corp.*, 8 Cal.4th 548, 572-573, fn. 9, 34 Cal.Rptr.2d 607 (1994). Here, there
24 is no evidence that Johnston was a substantial factor in causing the injury. The experts did not know
25 the cause of the fire and could not determine the cause of the fire. Neither expert attributed the conduct
26 of Johnston to the cause of the fire with any degree of certainty. Therefore, there is no triable issue of

27 ─────────────
28 [2] "When you, you're talking electrical wire of any type, when you over heat it time and time again you break down the plastic on the rubber that is around that wire and it will eventually give way." (Doc. 48-2, Exh.2, Nolen Depo. p. 70.)

fact the Johnston is the cause of the fire.

**C.     Duty to perform work Non-negligently**

Defendant argues that, assuming the vibrations contributed to the wiring rubbing the installation and sparking, there is no tort duty to avoid causing vibration during construction. (Doc. 47, Moving papers p. 4.)

Plaintiff responds that Johnston owed plaintiff a duty of reasonable care with respect to his renovation of the market. Whether he breached this duty, and whether his breach of duty caused the fire, are issues of fact for the trier of fact.

The Court does not reach this issue because the Court resolves the motion on the issue of causation.

**CONCLUSION**

For all the foregoing reason, the Court GRANTS the motion for summary judgment in favor of defendants Stuart Johnston and against plaintiff Kirstie Dunbar-Kari.

IT IS SO ORDERED.

**Dated:     November 29, 2010**                    /s/ Lawrence J. O'Neill
                                                                    UNITED STATES DISTRICT JUDGE